NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
———

No. 08-3540
———

UNITED STATES OF AMERICA

v.

JOSE PEREZ-BARRON,
also known as
Jose Medina

Jose Perez-Barron,

Appellant

———

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Criminal No. 07-cr-399-08)
District Judge: Honorable Sylvia H. Rambo

———

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
March 22, 2011

Before: FUENTES, SMITH, and VAN ANTWERPEN, *Circuit Judges*.

(Filed: April 1, 2011)
———

OPINION OF THE COURT
———

VAN ANTWERPEN, *Circuit Judge*.

## I.

Because we write only for the benefit of the parties, we will presume their familiarity with the facts and procedural history of this case. On March 26, 2008, pursuant to a written plea agreement, Jose Perez-Barron ("Perez") entered a guilty plea to conspiring with the intent to distribute 500 grams or more of cocaine hydrochloride in violation of 21 U.S.C. §§ 846 and 841(a)(1) and (b)(1)(A)(iii).

Under the terms of the plea agreement, Perez agreed to an appellate waiver. According to the provisions of the waiver, Perez ceded "the right to appeal any conviction and any sentence imposed within the statutory maximum, or the manner in which that sentence was determined, on the grounds set forth in Title 18, United States Code, Section 3742, or any other grounds, constitutional or non-constitutional, including the manner in which that sentence was determined in light of *United States v. Booker*, 125 S. Ct. 738 (2005)." (App. at 48.) In exchange for Perez's plea, the Government agreed: (1) to move for dismissal of an earlier multi-count indictment charging Perez with additional crimes; (2) to move for a three level reduction to his offense level for acceptance of responsibility; (3) to move for a two level reduction to his offense level for his minor role; and, (4) to stipulate that Perez was responsible for a smaller quantity of drugs than originally charged. As discussed below, the District Court conducted a colloquy with Perez with regard to the waiver.

The District Court sentenced Perez on July 30, 2008. Prior to sentencing, Perez submitted a sentencing memorandum objecting to the attribution of drug weight and

2

application of a dangerous weapon enhancement set forth in his pre-sentence report ("PSR").[1]  During the sentencing hearing, Perez also requested a ten month downward variance to address a perceived sentencing disparity that would otherwise result from the Government's inadvertent failure[2] to move for the application of a dangerous weapons enhancement to one of Perez's co-defendants, Oscar Miramontes.  Perez urged the District Court to remedy this perceived disparity under 18 U.S.C. § 3553(a)(6).[3]  Although the District Court sustained Perez's objection concerning the weight of drugs attributed to him in the PSR, it rejected his arguments regarding application of the dangerous weapon enhancement and the perceived co-defendant sentence disparity.  The District Court sentenced Perez to 70 months of imprisonment, which was at the bottom of the applicable 70 to 87 month Guideline range.

---

[1] The Probation Officer calculated Perez's Total Offense Level as 28.  This calculation factored in a three level reduction for his mitigating role, a two level reduction for his minor role in the offense, and a two level enhancement for his constructive possession of a handgun located in the ceiling of a room where he was allegedly staying.  The Probation Officer determined that Perez fit into Criminal History Category I and recommended a Guidelines range of 78 to 97 months.  The District Court adopted the PSR with the exception of a lesser quantity of drugs attributed to Perez as a result of the sustained objection.  This reduced his Total Offense Level to 27.  The resulting recommended Guidelines range was 70 to 87 months.

[2]  At sentencing, the Government described its failure to press for application of the dangerous weapon enhancement in Miramontes's case as an "oversight," (App. at 97), a point reiterated on appeal, (Gov. Br. at 6, 21).

[3] Section 3553(a)(6) directs sentencing courts to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."  18 U.S.C. § 3553(a)(6).

## II.[4]

Where a person knowingly and voluntarily waives his right to appeal, we generally do not exercise our jurisdiction to review the merits of the appeal "unless the result would work a miscarriage of justice." *See United States v. Gwinnett*, 483 F.3d 200, 203 (3d Cir. 2007). Perez concedes that his waiver was knowing and voluntary, (Perez Br. at 14), and our independent review of the record substantiates this concession. During his plea hearing, with the assistance of a court translator, Perez affirmatively acknowledged that he and his attorney reviewed the plea agreement and that he understood his right to appeal as well as the effect of the appellate waiver. The District Court examined Perez regarding the voluntariness of his acceptance of the plea agreement and correctly concluded that his acceptance was both knowing and voluntary. Additionally, the imposed sentence is covered by the terms of the waiver.

Perez nonetheless argues that the District Court misunderstood its authority to grant a downward variance based on 18 U.S.C. § 3553(a)(6), and he therefore contends that enforcement of the appellate waiver would "work a miscarriage of justice." *Id.* We disagree.

In our view, the sentencing colloquy Perez relies upon in making this argument does not demonstrate that the District Court misunderstood its authority to vary

---

[4] The District Court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction under 18 U.S.C. § 3742 and 28 U.S.C. § 1291. *See Gwinnett*, 483 F.3d at 203 (holding that a defendant's waiver of appellate rights does not divest this Court of jurisdiction to hear an appeal).

downward. Therein, the District Court stated "[w]ith regard to your argument on the disparity, I can only say that what is before me justifies the sentence of 70 to 87 months . . . . Now if the Third Circuit says that I have to make that adjustment, I'll do it. But at this moment, I cannot do it." (App. at 97-98.) When pressed further, the District Court explained, "I don't intend to buy your argument, counsel. I just don't know how far this Court has to go in avoiding disparate sentences . . . . I do believe that the facts of this case support the guideline that's involved. . . . And I do not believe that your request under 3553(a) to adjust the sentence to avoid what you perceive to be alleged disparity is appropriate." (*Id*. at 99.) Taken together, these statements do not support Perez's contention that the District Court rejected his variance request based upon the mistaken belief that it lacked the authority to grant it. Instead, the District Court's statements indicate that unless compelled to do otherwise, it intended to exercise its discretion to reject Perez's request based on the totality of circumstances before it.

This position is not inconsistent with our precedent. Although a sentencing court may consider sentencing disparities between similarly situated co-defendants, it is not required to do so under § 3553(a)(6). *United States v. Parker*, 462 F.3d 273, 277 (3d Cir. 2006). "We have concluded that Congress's primary goal in enacting § 3553(a)(6) was to promote national uniformity in sentencing rather than uniformity among co-defendants in the same case." *Id*. Moreover, "a defendant cannot rely upon § 3553(a)(6) to seek a reduced sentence designed to lessen disparity between co-defendants' sentences." *Id*. Thus, the District Court was correct in its understanding that it was not required to

5

remedy any perceived disparity between Perez and his co-defendants. *See id.* at 277-78 ("[Section] 3553(a) does not require district courts to consider sentencing disparity among co-defendants."). Finally, we do not believe that the Government's oversight in not pressing for application of a dangerous weapon enhancement in the case of one of Perez's co-defendants obliged the District Court to extend the same windfall benefit to Perez.[5] Accordingly, we are satisfied that enforcement of the appellate waiver does not work a miscarriage of justice. *Gwinnett*, 483 F.3d at 203.

**III.**

For these reasons, we conclude that Perez's waiver of his right to appeal was valid and is effective. Accordingly, we decline to exercise jurisdiction, and we will dismiss his appeal.

---

[5] Perez argues that the facts before us are analogous to circumstances we discussed in *United States v. Seligsohn*, 981 F.2d 1418, 1428-29 (3d Cir. 1992). In *Seligsohn*, a pre-*Booker* case, we noted that "unusual circumstances," such as where a prosecutor moved for a downward departure in the case of some but not all similarly situated co-defendants, might compel a lesser sentence in order to avoid the resulting disparity. *See id.* at 1428. Therein, we were concerned about the power of a prosecutor to "bring about downward departures for some defendants while *opposing* like treatment for co-defendants similarly situated." *Id.* (emphasis added). Here, the Government's failure to move for application of the dangerous weapon enhancement during the sentencing of Miramontes appears to be accidental and not a deliberate, contradictory position with respect to similarly situated co-defendants. Thus, the case before us is not analogous. Even if it were, however, the District Court was nonetheless free to exercise its discretion to reject Perez's request for a variance. *See Parker*, 462 F.3d at 277-78.